**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**ALONZO WATSON** **PETITIONER**

**VS.** **CASE NO.: 5:15CV00141 JLH/BD**

**WENDY KELLEY, Director,**
**Arkansas Department of Correction** **RESPONDENT**

## RECOMMENDED DISPOSITION

### I. Procedure for Filing Objections

This Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. A party to this suit may file written objections with the Clerk of Court within fourteen (14) days of filing of the Recommendation. Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

### II. Background

A Pulaski County, Arkansas jury found Mr. Watson guilty of capital murder and sentenced him to life without parole. *Watson v. State*, 2012 Ark. 430, *1. On direct appeal, Mr. Watson argued that the circuit court erred in denying his motion to suppress

statements he made to police after invoking his right to counsel. *Id.* The Arkansas Supreme Court summarized the evidence relevant to Mr. Watson's claim as follows:

> On September 2, 2010, appellant, victim Daniel Harris, and the victim's brother, O'Taravious Harris, spent the evening drinking alcohol and playing pool. According to O'Taravious Harris, appellant and the victim left the victim's house at approximately 2:00 a.m. on September 3, 2010. Sara Whipple, the victim's girlfriend, testified that appellant appeared at her house at 3:00 a.m. with blood and scratches on his arm and blood on his clothes. Appellant returned to her home the next day and stated that he wanted to burn his clothes and that he was worried that "his DNA was on stuff."
>
> Sergeant Mark Humphries, who testified at trial, stated that the victim's body was located in a deserted area behind a warehouse building in Jacksonville. The officer testified that the victim was lying on his back, with his genitals exposed, and had suffered multiple injuries to his face and head area. Sergeant Humphries noticed a large quantity of blood and collected a large "chunk of concrete," which was located by the victim's left side. A worker, who discovered the body, called 911, and emergency personnel later arrived at the scene.
>
> On September 3, 2010, in the early afternoon, appellant [Mr. Watson] and his mother went to the police station where Detective Richard Betterton and Detective Cassie Blackerby interviewed appellant. In his statement, appellant recounted a story to police about how he and the victim [Daniel Harris], whom he described as his "homeboy," were confronted by two other men, and the four individuals were involved in an altercation. Appellant gave a second statement to police on September 15, 2010, which the State agreed not to use against appellant.
>
> Subsequently, the State filed amended felony informations charging appellant with one count of capital murder with a habitual-offender provision. Prior to trial, appellant filed a motion to suppress his September 3, 2010 statement, asserting that it was taken in violation of his right to counsel. On December 15, 2011, the circuit court conducted a suppression hearing where Detective Blackerby testified, and the State played a video of appellant's interview. At the conclusion of the suppression hearing, defense counsel argued that appellant had requested counsel and, as a result, the statement should be suppressed. The State responded that appellant was not

> in custody, that he had not been arrested at that point, and that Miranda rights did not apply. The circuit court agreed that appellant did not make a custodial statement and denied appellant's motion to suppress the statement.
>
> On January 10, 2012, appellant stood trial where numerous witnesses testified for the State. Of those witnesses, three witnesses testified that appellant confessed to the murder. Other witnesses testified that the victim had been beaten with a heavy rock, causing multiple wounds, fractures, and bleeding to the face and neck. After the State's case-in-chief, the circuit court denied appellant's motion for directed verdict. Sergeant Humphries and Detective Blackerby, who had taken appellant's statement prior to trial, testified for the defense. Appellant's statements were never admitted into evidence during Detective Blackerby's testimony or during the rest of the trial.
>
> At the close of the evidence, defense counsel again moved for directed verdict, which the court denied. After deliberations, the jury convicted appellant of capital murder and sentenced him to life imprisonment without parole.

*Id*. at 1-3. The Arkansas Supreme Court held that, because appellant's statement was not used at trial, he could not demonstrate prejudice and affirmed the trial court's denial of the motion to suppress. *Id*. at 4-5.

Mr. Watson filed a pro se petition with the circuit court under Arkansas Rule of Criminal Procedure 37 claiming his trial counsel was ineffective: (1) for failing to argue another individual, Allen Boyd, was the murderer; (2) for failing to request a mental evaluation and a hearing for the circuit court to determine Ms. Whipple's competency; and (3) for failing to object to statements made about his refusal to be DNA tested during the State's closing argument. Mr. Watson also argued that his appellate counsel was

ineffective for failing to challenge the sufficiency of the evidence. *Watson v. State*, 2014 Ark. 203, 4-12 (2014). (Respondent's Exhibit 2 post-conviction at pp. 18-22)

The circuit court did not hold a hearing on Mr. Watson's Rule 37 petition, but instead based its ruling on its review of the pleadings as well as the files and records in the case. (Respondent's Exhibit 2, post-conviction at pp. 34, 39) In its order rejecting the petition, the circuit court held that appellate counsel was not ineffective for failing to challenge the sufficiency of the evidence because there was ample evidence in the record to sustain the conviction. The court also concluded that trial counsel was not ineffective for failing to investigate alternative theories of defense because there was not any evidence linking Allen Boyd to the murder. The court held counsel was not ineffective for failing to request a mental evaluation of witness Sara Whipple because she was presumed to be a competent witness and Mr. Watson did not offer any evidence to rebut the presumption, and because there was ample evidence to support the conviction without her testimony. Finally, the court held that trial counsel was not ineffective for failing to object to statements made in closing argument about Mr. Watson's refusal to provide a DNA sample until ordered to do so by the court because the issue was properly presented to the jury.[1] (*Id*. at pp. 36-39)

---

[1]The circuit court also rejected Mr. Watson's argument that his counsel was ineffective for failing to object to an alleged improper amendment to the criminal information. Mr. Watson did not pursue this claim on appeal to the Arkansas Supreme Court and does not raise it in his petition. (*Id*. at pp. 34-35)

On appeal of the denial of his Rule 37 petition to the Arkansas Supreme Court, Mr. Watson again claimed his counsel was ineffective for failing to investigate the possibility that Allen Boyd committed the murder. *Watson v. State*, 2014 Ark. 203, 5 (2014). The Court noted that, aside from alleging that Mr. Boyd had a potential motive for killing Harris, Mr. Watson had not presented any facts beyond speculation that Mr. Boyd had anything to do with the murder and affirmed the trial court's denial of post-conviction relief. *Id*.

Mr. Watson also argued that trial counsel was ineffective for failing to investigate, uncover, and utilize Ms. Whipple's mental-health history to his advantage during cross-examination. The Court found that this argument was unlike the argument Mr. Watson had made to the trial court, which focused on Ms. Whipple's competency to testify. *Id*. at 6. Consequently, the Court refused to consider the merits of the claim on appeal. *Id*. at 7.

The Court agreed with the circuit court that Mr. Watson's trial counsel was not ineffective for failing to object to remarks made during closing argument about his refusal to give a DNA sample, because Arkansas courts have not extended the protections of the Fifth Amendment to demonstrative, physical tests like DNA testing. *Id*. at 8.

Finally, the Court agreed with the trial court that appellate counsel was not ineffective for failing to argue sufficiency of the evidence because the following evidence supported the conviction:

> Harris's [the victim's] brother, O'Taravious Harris, testified that he, Harris, and Watson spent the evening together and ended up at his and Harris's

> home where they drank and played pool. He said that Watson and Harris left the home and that he later spoke with them on the phone at approximately 2:15 a.m. Whipple testified that Watson knocked on her bedroom window at about 3:00 a.m. She said that Watson was behaving as though he was scared and upset and that he told her that he had killed someone. Whipple noticed that he had scratches and blood on him, and she did not allow him in the house. She recalled that, the next day, Watson was worried about the presence of DNA and that he wanted to burn his clothing. Vicki Jones testified that Watson appeared at her home at 3:50 a.m. She said that Watson was not wearing a shirt and that he was sweating. She did not let him inside. Marcus Hildreth testified that he saw Watson outside Jones's house and that he gave Watson a ride. He said that Watson appeared as though he had been in a fight and that he seemed paranoid and nervous. Hildreth stated that Watson told him that he had "burnt" someone. Hildreth also picked up Jeff Neely and Adrian Hadley at an apartment complex. Neely and Hadley testified that Watson repeated several times that he had killed someone. Hildreth also testified that Watson later told him in jail that he had struck Harris in the head with a rock.

*Id*. at 10.

In this petition, Mr. Watson claims his trial counsel was ineffective for failing to investigate the possibility that Mr. Boyd committed the murder; failing to investigate Ms. Whipple's mental health to use for impeachment purposes; and failing to object to improper statements made during closing argument about his refusal to give DNA. (Docket entry #1 at pp. 5-10) Finally, he argues that appellate counsel was ineffective for failing to argue sufficiency of the evidence on direct appeal. (#1 at pp. 11-14)

Director Kelley responds that Mr. Watson has procedurally defaulted his claim that counsel was ineffective for failing to investigate Sara Whipple's mental health history because he did not raise the same claim with the appellate court that he raised with the circuit court. (#7 at p. 4) This is probably true; however, in the interest of judicial

economy this Court will address the merits of all of Mr. Watson's claims. See *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (en banc) (in the interest of judicial economy, a court may address the merits of a petition, despite likely procedural default). For the reasons set forth below, the Court will recommend that Judge Holmes dismiss the petition with prejudice.

**III. Discussion**

A. Standard of Review

Federal courts can grant a writ of habeas corpus to a state prisoner only if a state court decision was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Garrison v. Burt*, 637 F.3d 849, 853 (8th Cir. 2011) (quoting 28 U.S.C. § 2254(d)). Relief will be granted only if the state court decision is both incorrect and unreasonable. *Id*. (quoting *Cole v. Roper*, 623 F.3d 1183, 1187 (8th Cir. 2010)). The Court must presume the state court's factual findings are correct, and it is Mr. Watson's burden to rebut this presumption by clear and convincing evidence. *Id*. (citations omitted).

B. Request for a Hearing

In his petition, Mr. Watson requests an evidentiary hearing to develop his claims. (#1 at pp. 7-8) Under 28 U.S.C. § 2254, if a habeas petitioner has failed to develop the factual basis of his claims in state court proceedings, the federal court "shall not" hold an

evidentiary hearing unless the applicant shows: (1) that his claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court (which is not alleged here), or on "a factual predicate that could not have been previously discovered through the exercise of due diligence"; and (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254.

Mr. Watson has not made the requisite showing. He has not alleged that he could not have previously discovered the information regarding Allen Boyd and Sara Whipple. In fact, he alleges that the facts should have been discovered by his attorney prior to trial.

Further, Mr. Watson has not demonstrated by clear and convincing evidence that but for the alleged constitutional error no reasonable fact-finder would have found him guilty given the evidence presented at trial. Mr. Watson has not met his burden to establish that he is entitled to an evidentiary hearing.

C. Ineffective Assistance of Counsel

A criminal defendant's Sixth Amendment right to effective assistance of counsel "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 4 (2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) and *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

In order to prevail on his habeas corpus claim based on ineffective assistance of counsel, Mr. Watson must show: (1) that trial counsel's performance was so deficient that it fell below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney; and (2) that there is a reasonable probability that the outcome of the trial would have been different but for the substandard performance of trial counsel. See *Strickland*, 466 U.S. at 687–94. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct. 2527 (2003) (quoting *Strickland*, 466 U.S. at 694). The Court's scrutiny of counsel's performance is highly deferential, and the Court applies a strong presumption that counsel's conduct falls within the "wide range of reasonable professional judgment." *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006) (citing *Strickland*, 466 U.S. at 689); see also *Middleton v. Roper*, 455 F.3d 838, 845 (8th Cir. 2006)).

"Failure to establish either Strickland prong is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011) (citation omitted). The Court is not required to address the performance prong if the petitioner cannot affirmatively prove prejudice. *United States v. Lee*, 715 F.3d 215, 221 (8th Cir. 2013)(citation omitted).

1. *Claim One - Failure to Investigate Allen Boyd*

Mr. Watson argues his trial counsel was ineffective for failing to investigate Allen Boyd as the murderer. The Arkansas Supreme Court, applying the *Strickland* test, held that, "aside from alleging that Boyd had a potential motive for killing Harris, Watson does not present any facts beyond speculation that Boyd had anything to do with Harris's murder. As such, this allegation is conclusory and does not provide a basis for postconviction relief." *Watson*, 2014 Ark. at 5. The Court's decision is not contrary, to or an unreasonable application of, the law; nor is it an unreasonable determination of the facts in light of the fact that Mr. Watson did not present any evidence to support this claim in the state court.

Mr. Watson argued to the Supreme Court that the trial court should have allowed an evidentiary hearing to develop the facts. The Court rejected this argument, however, holding that the presumption in favor of a counsel's effectiveness could not be overcome by a "mere possibility" that an evidentiary hearing might produce evidence to bolster an allegation contained in a post-conviction petition.

In this petition, Mr. Watson has not come forward with any evidence to establish prejudice from his attorney's failure to investigate Allen Boyd. Instead, he offers the same speculation that he offered the circuit court. Accordingly, Mr. Watson's claim fails.

2. *Claim Two - Sara Whipple's Competence*

Mr. Watson argues that his counsel was ineffective for not investigating Ms. Whipple's mental health history. He notes that she was a key witness for the State and alleges that she suffered from bipolar disorder and schizophrenia. He argues that, had his counsel adequately investigated her mental illness, he could have more effectively cross-examined her at trial.

Counsel's cross-examination of Ms. Whipple did not rise to the level of ineffective assistance of counsel. On cross-examination, trial counsel elicited testimony from Ms. Whipple that she was taking anxiety medication. Additionally, he pointed out the weaknesses in her story, including the fact that she did not have any personal knowledge of what happened. Further, in his summation, counsel argued that Ms. Whipple had lied about seeing cuts on Mr. Watson's arm and hand. (Respondent's Exhibit 2 at pp. 336, 598) See *Parker v. Bowersox*, 188 F.3d 923, 928 (8th Cir. 1999) (counsel's cross-examination was not ineffective where attorney impeached witness and pointed out weaknesses in his story); *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995) ("[F]lawless cross-examination is rare. *Strickland* does not require perfect trial performance; it requires only competence."); see also *Flowers v. Norris*, No. 5:07CV00197 JLH, 2008 WL 5401675, at *11 (E.D. Ark. Dec. 23, 2008) aff'd, 585 F.3d 413 (8th Cir. 2009).

While the trial court was not presented with the same argument, it addressed whether the outcome of the trial would have been different without Ms. Whipple's

testimony. The Court stated: "In light of the overwhelming evidence of the defendant's guilt, even had Whipple's testimony been disallowed, the Court does not find that there is a reasonable probability that the outcome of the trial would have been any different." (Respondent's Exhibit 2 at p. 38)

After reviewing the evidence presented at trial, it is highly *improbable* that the outcome of the case would have been different even if Ms. Whipple's testimony had been thoroughly discredited through cross-examination. Her testimony that Mr. Watson told her that he had killed somebody was cumulative to testimony offered by the State through other witnesses. Furthermore, the State linked Mr. Watson to the crime scene through the testimony of another witness. (Respondent's Exhibit 2 at pp. 343-55)

The state courts' denial of relief on this claim was neither an unreasonable application of the law nor an unreasonable determination of the facts in light of the evidence.

3. *Claim Three - Closing Argument*

Mr. Watson complains that his counsel was ineffective for failing to object to statements made by the prosecutor during closing argument about his refusal to give a DNA sample. He claims the statements allowed the jury to draw an adverse inference from the fact that he invoked his Fifth Amendment right against self-incrimination. (#1 at pp. 9-10)

The Arkansas Supreme Court held that Mr. Watson was not prejudiced by his counsel's failure to object because the objection would not have been successful. The Court pointed to Arkansas Supreme Court precedent holding that the protections of the Fifth Amendment do not extend to demonstrative, physical tests but only to testimony and other communications. *Watson*, 2014 Ark. at 8 (citing *Talley v. State*, 2010 Ark. 357, 5 (2010); *Moore v. State*, 323 Ark. 529, 537–38 (1996). The Arkansas Supreme Court's ruling is not an unreasonable application of clearly established federal law. See *Schmerber v. California*, 384 U.S. 757, 763–64, 86 S.Ct. 1826 (1966)("Since blood test evidence. . . was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on [Fifth Amendment] privilege grounds.").

4. *Claim Four - Sufficiency of the Evidence*

Mr. Watson argues that his appellate counsel was ineffective for failing to argue that there was insufficient evidence to find him guilty beyond a reasonable doubt of capital murder. In its decision affirming the denial of Rule 37 relief, the Arkansas Supreme Court found that Mr. Watson could not prevail on this claim of ineffective assistance of counsel, because he had not established that the sufficiency of the evidence claim would have been successful. *Watson*, 2014 Ark. at 10-11. Without such a showing, Mr. Watson could not meet his burden of proving prejudice under *Strickland*.

The Arkansas Supreme Court did not err in finding that Mr. Watson had not established *Strickland* prejudice. To succeed on his claim, Mr. Watson must establish that, had counsel argued sufficiency of the evidence, the appellate court would have reversed his conviction because, based on the evidence presented at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781 (1979). The Court, in making this determination, must review the record in the light most favorable to the prosecution. *Id*.

After reviewing the evidence in this case, the Court concludes that the state court decision was neither incorrect nor unreasonable, and Mr. Watson is not entitled to habeas relief.

## IV. Certificate of Appealability

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. The Court can issue a certificate of appealability only if Mr. Watson has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). In this case, Mr. Watson has not provided a basis for issuing a certificate of appealability.

## V. Conclusion

The Court recommends that Alonzo Watson's petition for writ of habeas corpus be dismissed, with prejudice. The Court further recommends that no certificate of appealability be issued.

DATED this 29th day of June, 2015.

____________________________________

UNITED STATES MAGISTRATE JUDGE